UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYLVIA KNIGHT,

      Plaintiff,                    Civil Action No.  14-11389

            v.                      District Judge LINDA V. PARKER
                                  Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

    Plaintiff brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  The parties have filed cross-motions for summary judgment.  Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).   For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Doc. #17] be DENIED, and that Plaintiff's Motion for Summary Judgment [Doc. #14] be GRANTED to the extent that the case be remanded for further administrative proceedings.

## I.  PROCEDURAL HISTORY

    On November 10, 2011, Plaintiff applied for DIB, alleging disability as of March

3, 2011 (Tr. 110). After the initial denial of her claim, Plaintiff requested an administrative hearing, held on October 18, 2012 (Tr. 29). Administrative Law Judge ("ALJ") Michael Wilenkin presided. Plaintiff, represented by counsel, testified (Tr. 31-45), as did Vocational Expert ("VE") Lawrence Zakin (Tr. 45-47). On November 5, 2012, ALJ Wilenkin found that Plaintiff was capable of performing her past relevant work as a telephone receptionist, office staffer, and office operator (Tr. 25). On January 29, 2014, the Appeals Council denied review (Tr. 1-5). Plaintiff filed the present action on April 4, 2014.

## II. BACKGROUND FACTS

Plaintiff, born August 9, 1954, was 58 at the time of the administrative decision (Tr. 25, 110). She left school after ninth grade and worked previously as a "life skills trainer" at an assisted living home and as a medical assistant (Tr. 132). She alleges disability due to back pain, multiple sclerosis, anxiety, depression, and leg pain (Tr. 131).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

She lived in a townhouse in Harrison Township, Michigan with her husband and adult daughter (Tr. 32). She drove "very little" due to "a little confusion" and difficulty "getting in and out of the car" (Tr. 32). She was able to read and write (Tr. 33). She completed specialized vocational training as a "medical assistant" which involved "life skill training" for individuals with closed head injuries (Tr. 33). She had performed the job for "many years" (Tr. 33). She also held a job which involved phlebotomy and administering EKGs

-2-

(Tr. 34).  Her former work additionally included a job as a "multiple line" telephone receptionist and as an office manager (Tr. 35-36).  She also worked at a medical staffing company in a scheduler-type position (Tr. 36).

Plaintiff experienced chronic lower back pain and lower extremity pain despite 2009 back surgery (Tr. 36).  She had not been prescribed post-operative physical therapy or advised to perform home exercises (Tr. 38).  She experienced back pain within one year of the surgery (Tr. 38).  She did not experience significant relief from either ice packs or a heating pad, but obtained partial relief by taking Vicodin and Flexeril (Tr. 39).  She avoided large doses of either Vicodin or Flexeril due to concerns of addiction but experienced severe nighttime pain (Tr. 39).  She took Xanax for anxiety (Tr. 40).  Symptoms of anxiety included rapid heartbeat, sweating, and separation anxiety (Tr. 40).  She denied current psychiatric treatment, noting that she was unable to afford therapy (Tr. 40).

Plaintiff required the use of a shower chair and due to shoulder pain, needed help dressing (Tr. 41).  She had not received treatment for the shoulder condition (Tr. 42).  She was able to watch television and play video games on her laptop or cell phone (Tr. 42).  She tried to attend church as often as possible (Tr. 42).  She was unable to walk for longer than five minutes or sit for more than 20 (Tr. 43).  She was unable bend at the waist or ascend a flight of stairs without assistance (Tr. 43).  She was unable to lift more than two pounds (Tr. 43).

In response to questioning by her attorney, Plaintiff stated that she left her most recent

job after falling asleep on the job due to pain medication (Tr. 44). She had the use of a "loaner" cane, but did not use it due to her inability to walk for more than short periods (Tr. 44). She had fallen three times in the past six months (Tr. 44). She experienced a short attention span (Tr. 44).

### B. Medical Evidence

#### 1. Treating Sources

In June, 2008, nerve conduction studies showed "mild right S-1 radiculopathy" (Tr. 262). A June, 2009 cardiac stress test was normal (Tr. 266). In May, 2010, Keith S. Defever, M.D. noted that Plaintiff took Vicodin two to three times a week for back pain (Tr. 242). In October, 2010, Plaintiff denied back pain (Tr. 234). Plaintiff appeared "anxious" but not depressed (Tr. 233). She denied mood swings and displayed normal judgment (Tr. 233).

Dr. Defever's January, 2011 notes state that Plaintiff's diabetes was managed with diet (Tr. 223). Plaintiff denied diabetes related symptoms but reported right leg discomfort while walking (Tr. 223). A February, 2011 MRI of the lumbar spine showed severe degenerative disc disease at L2-L3, L3-L4, and L4-L5 with facet arthritis and "multilevel central canal stenosis" (Tr. (Tr. 205, 265, 283). Dr. Defever's March, 2011 notes state that Plaintiff recently fell while walking after her right leg "gave out" (Tr. 230). Notes from a neuro-surgical consultation the following month state that on a scale of 1 to 10, Plaintiff experienced level "9" back pain and level "10" leg pain (Tr. 278). Plaintiff reported that she

was unable to walk or stand for more than five minutes or sit for more than 30 (Tr. 278). She exhibited an antalgic gait (Tr. 279). Neurologist Teck Mun Soo recommended a series of three steroid injections (Tr. 280). In May, 2011, Plaintiff sought pain management treatment, reporting that calf pain in both legs was worse than low back pain (Tr. 306). She reported only partial relief from prescribed pain medication (Tr. 206). She exhibited full strength in all extremities (Tr. 209). The same month, she reported some relief after undergoing epidural injections (Tr. 213). Dr. Defever's notes from the same month state that Plaintiff reported intermittent right hand numbness with the inability to lift more than three pounds (Tr. 218). Dr. Defever's July, 2011 records state that Plaintiff experienced "miracle" results from the epidural but was unable to receive further injections due to insurance limitations (Tr. 215-216). Dr. Defever opined that Plaintiff's back problems were attributable to her work "assisting patients in and out of bed" (Tr. 216).

### 2. Non-Treating Sources

In May, 2012, Jose Mari G. Jurado, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of a 2009 laminectomy and her inability to sit, stand, or walk for more than 15 minutes at one time (Tr. 285). Plaintiff reported pain while attempting lower extremity range of motion testing (Tr. 286-287). She required assistance in changing positions (Tr. 287). In a work-related abilities assessment, Dr. Jurado found that Plaintiff was limited to lifting 10 pounds on an occasional basis and would require a change of position after sitting or standing for 15 minutes and walking for

five to seven minutes (Tr. 293).  He found that Plaintiff was limited to sitting for two hours a day, standing for two hours, and walking for one hour (Tr. 293).  He found the presence of postural and manipulative limitations (Tr. 294-295).  He found that Plaintiff was precluded from all work involving heights, moving mechanical parts, driving, humidity, airborne pollutants, and extreme heat (Tr. 296).

### 3.  Evidence Submitted After the ALJ's November 5, 2012 Decision[1]

Dr. Defever's April, 2013 examination records note chronic lower back pain and ongoing anxiety (Tr. 305-308).

### C.  Vocational Expert Testimony

VE Lawrence Zakin classified Plaintiff's former work as a medical assistant as skilled and exertionally light; private duty attendant, semiskilled/heavy; telephone receptionist, semiskilled/sedentary; office operational work, semiskilled/sedentary; nurse's assistant, semiskilled/medium; and staff assignment work, sendentary/semiskilled[2] (Tr. 45).

---

[1]

Plaintiff cites these records in support of remand.  *Plaintiff's Brief* at 5.  However, the April, 2013 records were created months after the ALJ's November 5, 2012 determination and are thus intrinsically immaterial to the present claim.  42 U.S.C. 405(g).

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

The ALJ then asked the VE whether an individual of Plaintiff's age, education, and work experience could perform any of her past relevant work if all of Plaintiff's testimony were credited (Tr. 45-46). The VE testified that the former work consisting of "office management or clerical work" would not require significant lifting (Tr. 46). However, he added that the testimony did not provide complete information regarding postural limitations (Tr. 46). The VE also noted that while the office/clerical position would generally allow her change positions every 15 to 20 minutes, "if the phones were busy and she was on duty one would expect her to be seated longer than that 15 minute[] basis" (Tr. 46). He stated that he was not sure that Plaintiff was capable of any of her past relevant work based on her testimony (Tr. 46). The VE offered no testimony regarding the ability to perform jobs other than the former work.

In response to questioning by Plaintiff's attorney, the VE stated that if Plaintiff were "off task" for more than 20 percent of the day due to pain, or, required to miss more than two days of work each month due to illness, all work would be precluded (Tr. 47).

### D.     The ALJ's Decision

Citing the administrative transcript, the ALJ found that Plaintiff experienced the severe impairments of low back pain, diabetes, and right leg pain, but that none of the conditions met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr.20, 22). He found only "mild" limitations in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 21). The ALJ found that Plaintiff

was capable of a full range of sedentary work (Tr. 22). He concluded that she was capable of performing her past relevant work as a telephone receptionist, office staffer, and office operator (Tr. 25).

The ALJ discounted Plaintiff's testimony, noting that imaging studies created after the 2009 laminectomy showed "no significant nerve root impingement" (Tr. 24). He observed that evaluations of the cervical spine and upper extremities were negative for abnormalities (Tr. 24). The ALJ cited Plaintiff's April, 2012 statement to Dr. Domiczek that she experienced only "minor" health complaints (Tr. 25). He noted that the condition of diabetes had been characterized as "stable and managed with diet" (Tr. 22).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into

account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

-9-

# V.  ANALYSIS

## The ALJ's Findings at Step Two, Three and Four

Plaintiff's three arguments for remand center on the ALJ's purported failure to adequately consider her limitations as a result of multiple sclerosis.

First, she contends that the ALJ failed to consider multiple sclerosis-related work limitations when crafting the RFC.  *Plaintiff's Brief,* 4-8, *Docket #14.*  Second, she argues that the ALJ erred by failing to consider whether she was disabled at Step Three under the applicable listing for multiple sclerosis.  *Id.* at 8-11 (*citing* 20 C.F.R. pt. 404, App. 1 § 11.09).  On a related note, she argues last that the ALJ's failure to consider the condition of multiple sclerosis tainted the credibility determination.  *Id.* at 11-13.

### 1.  Steps Two and Three

The ALJ's lack of reference to multiple sclerosis, by itself, does not constitute reversible error.  June, 2010 and July, 2011 treating notes refer to the condition of multiple sclerosis as "chronic," but do not indicate that the condition created functional limitations (Tr. 215, 240).  The lack of reference to multiple sclerosis-related symptomology in the treating records constitutes substantial evidence that the condition did not create work-related impairments.  Because the omission of multiple sclerosis from the "severe" impairments at Step Two is supported by substantial evidence, the ALJ was not required to consider whether the condition met or medically equaled a listed impairment at Step Three of the sequential analysis.

-10-

## 2. The RFC

However, Plaintiff's more generalized argument that the RFC was neither well supported nor explained is well taken.   The ALJ found the ability to perform a "full range" of sedentary work, which is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . ." (Tr. 22); 20 C.F.R. § 404.1567(a).   However, the medical records contain uncontradicted evidence that Plaintiff also experienced "non-exertional" impairments which would limit her to a *reduced* range of sedentary work.[3]

The partial adoption of Dr. Jurado's findings is of particular concern. The ALJ gave "significant" weight to Dr. Jurado's consultative evaluation (Tr. 24).   However, while the examination notes include Dr. Jurado's observation that Plaintiff experienced reduced grip strength (Tr. 286), the RFC does not mention manipulative impairments.   The question of whether Plaintiff experienced some degree of manipulative limitations is particularly critical given that she was limited to sedentary work.   Under SSR 96-0p, "any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." SSR 96-9p, 1996 WL 374185, *8 (1996). While of course, the ALJ found that Plaintiff could

---

[3]The term "exertional" refers to the ability to lift, carry, sit, stand, walk, push, and pull. 20 C.F.R. § 404.1569a(b). In contrast, "non-exertional" refers to any other physical or psychological limitation, i.e., postural, manipulative, visual, environmental, social, and concentrational limitations. 20 C.F.R. § 404.1569a(c).

perform the past relevant *semiskilled* work, it is nonetheless unclear how manipulative limitations created by reduced grip strength would affect the Step Four finding.

Likewise, although the ALJ purportedly endorsed Dr. Jurado's observations, he appeared to give scant weight to Dr. Jurado's finding that Plaintiff experienced a reduced range of motion of the lumbar spine (Tr. 288) and that Plaintiff's movements were "slow" and "shaky" with "balance issues" (Tr. 288, 290). The "slow" and "shaky" findings, at a minimum, imply impairment in the ability to perform the postural activities of stooping, kneeling, bending, and crouching. 20 C.F.R. § 404.1569a (b-c). Notably, Dr. Jurado's observation of significant range of motion limitations is not contradicted by any other portion of the record.

The ALJ's treatment of Dr. Jurado's findings is additionally problematic. He adopted Dr. Jurado's above-discussed "observations" but in contrast, gave "no weight" to Dr. Jurado's accompanying residual functional capacity assessment because the assessment credited Plaintiff's "subjective complaints regarding sitting, standing, and walking" (Tr. 24). The ALJ's rationale for bifurcating the "observations" from the accompanying "assessment" is weak at best. While Dr. Jurado stated that he took "into consideration" Plaintiff's report that she was unable to sit or stand for more than 15 minutes and walk for more than seven (Tr. 287), the consultative report contains no suggestion that Dr. Jurado believed that Plaintiff was exaggerating her limitations. Further, even assuming that Dr. Jurado's findings regarding sitting, standing and walking were properly rejected (Tr. 293), the ALJ provides no basis for

-12-

the rejection of the *manipulative* and *environmental* limitations found in the assessment; namely the finding that Plaintiff was precluded from all overhead reaching and was limited to occasional handling, fingering and feeling and was precluded from work involving environmental hazards (Tr. 294, 296).

To be sure, an ALJ is not obliged to adopt or even explain his reasons for rejecting a non-treating medical source. *Kornecky v. Commissioner of Social Security,* 167 Fed.Appx. 496, 506, 2006 WL 305648, *9 (6th Cir. February 9, 2006)(citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994)). However, given the "significant weight" accorded Dr. Jurado's observations, it is unclear from the record why the ALJ failed to adopt the accompanying finding postural, manipulative, and environmental limitations. *Barnes v. Commissioner of Social Sec.* 2014 WL 988891, *8 (E.D.Mich. March 12, 2014)(failure to explain why "adopted" consultative findings were omitted from the work-related impairments provides grounds for remand). Here, the omission of all of Dr. Jurado's findings regarding postural, manipulative, and environmental limitations from the RFC is particularly questionable, given that the medical records do not contain a work-related abilities assessment other than Dr. Jurado's. As such, a remand for clarification is required.

### 3. The Step Four Findings

In addition to the above concerns, the ALJ's ultimate finding that Plaintiff was capable of performing her past relevant work is not well supported. The ALJ found that Plaintiff could perform her past relevant work as a "telephone receptionist, office staffer, and office

operator" based on the VE's testimony that those jobs were performed at the sedentary level (Tr. 25).   To be sure, the RFC for a *full range* of sedentary work would allow for the performance of the past relevant work performed at that exertional level.

However, as discussed above, substantial evidence does not support the RFC for a "full range" of sedentary work.  Significantly, while the VE testified that the receptionist/office work positions were sedentary, he expressed doubt that Plaintiff could perform those jobs if even some of her alleged limitations were credited (Tr. 46).   Of course, in general, an ALJ is entitled to reject some or all of a claimant's professed limitations.  *Cruse v. Commissioner of Social Sec.,* 502 F.3d 532, 542 (6th Cir.2007).   However, here, the ALJ's rejection of Plaintiff's claims is based on a myopic reading of the treating records and Dr. Jurado's above-discussed findings (Tr. 24-25).

For example, the ALJ noted that Plaintiff demonstrated a normal range of knee motion in April, 2012 and experienced only "minor" complaints (Tr. 24-25).  However, the same records also show that Plaintiff continued to experience the conditions of lower back pain and radiculopathy for which she was required to take narcotic pain medication twice a day (Tr. 300).   The fact that Plaintiff demonstrated normal knee motion does not discredit her reports of chronic, long-term lower back pain and radiculopathy.  Moreover, her allegations of back and radiating leg problems are strongly supported by the February, 2011 MRI showing severe degenerative disc disease at L2-L3, L3-L4, and L4-L5 with facet arthritis and "multilevel central canal stenosis" (Tr. 205, 265, 283).

-14-

The weakly supported Step Four determination is particularly bothersome, given that Plaintiff, 58 at the time of the administrative decision, is considered of "advanced age" for purposes of the disability determination.  A determination that Plaintiff was unable to perform any of her past relevant jobs (and that none of her job skills were transferrable to positions within the exertional level found in the RFC)  would require Defendant to show that she was capable of exertionally "medium"[4] work.  20 C.F.R. §§  404.1563(e), 404.1568(d).  "People of advanced age (55 and over) are considered of an age which significantly affects their ability to do substantial gainful activity; if they are severely impaired and cannot do medium work, they must have skills that can be transferred to less demanding jobs which exist in significant numbers in the national economy."  *Warren v. Commissioner of Social Sec.,* 2015 WL 348776, *4  (E.D.Mich. January 26, 2015)(Binder, M.J.)(*citing* § 404.1563).

For these reasons, a remand is required.  The final question is whether to remand for further fact-finding or an award of benefits.   While Plaintiff has presented a strong case for benefits, the errors discussed herein require additional fact-finding before reaching the question of whether an award of benefits is appropriate.  *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994).  Upon remand, I recommend that the ALJ be required to articulate his reasons for either adopting or rejecting the postural, manipulative, and environmental limitations found in Dr. Jurado's assessment.  If after reconsidering the

---

[4]

20 C.F.R. § 404.1567(c) defines medium work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  None of the treating or consultative records suggest that Plaintiff was capable of exertionally medium work.

assessment, the ALJ finds the presence of non-exertional limitations, the limitations will be incorporated into the RFC.   If necessary, additional vocational testimony should be taken.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #17] be DENIED, and that Plaintiff's Motion for Summary Judgment [Doc. #14] be GRANTED to the extent that the case is remanded for further proceedings consistent with my recommendation.

Any objections to this Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).   Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: April 15, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on April 15, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager